UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DEMETRIUS HILL,

                   Plaintiff,

     -against-

NEW YORK POST, et al.,

                   Defendants.

------------------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED:  5/28/10
>
> **REPORT AND RECOMMENDATION TO THE HONORABLE PAUL A. CROTTY**
>
> 08 Civ. 5777 (PAC) (FM)

**FRANK MAAS**, United States Magistrate Judge.

       Plaintiff Demetrius Hill ("Hill") is serving a twenty-year sentence following his conviction on federal firearms charges. He brings this pro se action against the New York Post ("Post"), the New York Daily News ("News"), reporters working for the Post and News, unnamed editors of those publications, and unnamed Federal Bureau of Prisons ("BOP") employees (collectively, the "Defendants"). The eight claims in Hill's Second Amended Complaint ("SAC") (Docket No. 7) arise out of his alleged relationship with Magdalena Sanchez ("Sanchez"), a former prison psychologist at the Metropolitan Detention Center ("MDC") in Brooklyn, who pleaded guilty, in the United States District Court for the Eastern District of New York, to a charge of having lied about having a sexual relationship with an inmate. The Post and the News both reported that Hill was the inmate in question.

Hill alleges in the First and Second Claims in the SAC that the Post and News repeatedly violated his privacy rights by revealing that he was the victim "spoken about" in the Sanchez indictment. (SAC at 2). In Claim Three, Hill alleges that the Post reporters conspired with BOP employees to disclose confidential information concerning his medical history. (Id.). Hill also alleges in this claim that the Post reporters libeled him by falsely representing that he had engaged in "various forms of misconduct, including throwing feces and urine at correctional staff." (Id.). In Claim Four, Hill contends that the Post reporters conspired with the BOP employees to defame him by falsely alleging that he had "ratted, snitched an[d] informed" about his "alleged" affair with Sanchez. (Id. at 3). Claim Five alleges that a specific Post reporter libeled Hill by publishing the allegation that he was a snitch and stating that his sentence had been "slashed" in exchange for his cooperation. (Id.). Claim Six alleges that another Post reporter libeled Hill by misrepresenting that he was an informant and by publishing falsehoods about his other alleged bad acts. (Id. at 3-4).

The last two claims in the SAC are alleged to arise under federal law. In Claim Seven, Hill contends that unnamed Post and News reporters conspired to discriminate against him on racial and gender grounds, in violation of 42 U.S.C. § 1985, by publishing his name and photograph, actions which they allegedly would not have taken if he were female, white, or not incarcerated. (Id. at 4). In Claim Eight, Hill

contends that unnamed Post and News editors violated 42 U.S.C. § 1986 by failing to prevent their writers' and reporters' alleged wrongs. (Id. at 35).

Hill seeks a total of $10 million in compensatory damages and $20 million in punitive damages. Hill also seeks injunctive relief requiring the Post and News to print corrective articles on their front pages. (Id.).

The Defendants have moved to dismiss the complaints against them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (See Docket Nos. 25, 30). For the reasons set forth below, both motions should be granted.

I.  Factual Background

Construing the indictment against Sanchez, the SAC, the newspaper articles to which it refers, and Hill's other papers in the light most favorable to Hill, the relevant facts may be summarized as follows:

On April 2, 2007, Sanchez was named in a two-count indictment in the Eastern District of New York which charged her with having engaged in a sexual act with an unidentified MDC inmate and having lied to a special agent of the Department of Justice Office of the Inspector General about her "sexual relationship" with that inmate. See United States v. Sanchez, 07 Cr. 246 (E.D.N.Y. Apr. 2, 2007). Within a matter of days, both the Post and the News began publishing articles that disclosed the inmate was

Hill.[1]  (SAC at 2).  The articles further disclosed that Hill was on a suicide watch at the MDC and suggested that he had been able to have his sentence slashed in exchange for serving as an informant against his alleged paramour.  (Id. at 3).

Later articles contained additional unflattering information that Hill contends is false.  For example, an article in the Post stated that Hill once threatened to kill his mother and falsely told police that a gun found in his car belonged to his brother.  (See id. at 4).

During the course of the media blitz concerning Sanchez, defendant Kathianne Boniello, a Post reporter, interviewed Hill.  (Id. at 3).  Although Hill explained that he had not worked as an informant and asked Boniello to "clear up" this issue, Boniello subsequently wrote an article, published in the Post, which failed to correct the record.  (Id. at 4).  Indeed, the false statements branding Hill as a cooperator were reprinted in other publications available to inmates in penitentiaries around the country, thereby endangering Hill's safety.  (Id.).  Following those articles, BOP officials transferred Hill frequently among institutions, claiming that this was a safety measure, rather than an act of retaliation.  (Id.).

---

[1]  The News has attached copies of its articles to its motion papers.  (See Aff. of Anne B. Carroll, Esq., sworn to on January 6, 2010, Exs. A-F).  The Court can take judicial notice of the Post articles mentioned in the complaint.  See Fed. R. Evid. 201(b); see also Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (complaint may be deemed to include documents incorporated by reference).

II.     Standard of Review

Federal courts are courts of limited jurisdiction.  Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 651 F. Supp. 2d 155, 169 (S.D.N.Y. 2009).  Accordingly, a district court presented with a motion under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules must first address the issue of its subject matter jurisdiction under Rule 12(b)(1).  See Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) ("subject matter jurisdiction is a threshold inquiry"), vacated en banc on other grounds, 585 F.3d 559 (2d Cir. 2009); Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, __ F. Supp. 2d __, No, 08 Civ. 456 (KMK), 2010 WL 1270211, at *6 (S.D.N.Y. Mar. 31, 2010).  The plaintiff has the burden of proving by a preponderance of the evidence that such jurisdiction exists.  Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  That showing cannot be made merely by "drawing from the pleadings inferences favorable to the [plaintiff]."  Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

In this case, as set forth below, Hill has failed to establish subject matter jurisdiction.  There consequently is no need to address the legal standard applicable to the Defendants' motions to dismiss the SAC pursuant to Rule 12(b)(6) for failure to state a claim.

5

III.     Discussion

In his papers, in an effort to establish subject matter jurisdiction, Hill invokes both federal question and diversity jurisdiction.  I will first consider whether he has alleged a sufficient federal claim, and then turn to whether there is a basis for this Court to exercise diversity jurisdiction.

   A.     Federal Question Jurisdiction

To establish federal question jurisdiction, Hill must plead a "colorable" claim "arising under" the "Constitution or laws of the United States."  Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006).  A frivolous claim does not meet this pleading threshold.  See Barco-Sandoval v. Gonzales, 516 F.3d 35, 40 (2d Cir. 2008).

      1.     Crime Victims' Rights Act

In his First and Second Claims, Hill contends that the Post and News improperly disclosed "the fact that he was the alleged sexual victim spoken about in the [Sanchez] indictment."  (SAC at 2).  In his first amended complaint, Hill characterized these claims as arising under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.  (Am. Compl. (Docket No. 5) at 1).  That statute affords crime victims numerous rights in federal criminal cases, including "the right to be treated with fairness and respect for the victim's dignity and privacy."  18 U.S.C. § 3771(a)(8).  However, the CVRA also expressly states that it shall not "be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person

6

for the breach of which the United States or any of its officers or employees could be held liable in damages." Id. § 3771(d)(6).  Additionally, the CVRA provides that crime victims may assert their rights "in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred." Id. § 3771(d)(3).

Accordingly, to the extent that Hill states a claim that the BOP employees violated his right to privacy under the CVRA, he cannot recover any damages.  Moreover, any action that he might have brought to enforce his statutory rights would have had to be commenced in the United States District Court for the Eastern District of New York, where the sexual improprieties occurred.  The CVRA does not afford a basis for this Court to exercise federal question jurisdiction over Hill's suit.

2. HIPAA

In his Third Claim, Hill alleges, in part, that the Post reporters conspired together, and with BOP employees, to "violate [his] right to privacy in his mental health history" by, among other things, disclosing that he was on suicide watch at the MDC. (SAC at 2-3).  To the extent this claim arises under federal law, Hill presumably is proceeding under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320, et seq., which requires health care providers to keep patient medical records confidential.  Courts overwhelmingly have concluded, however, that a patient cannot bring a private right of action under HIPAA. See, e.g., Mascetti v.

7

Zozulin, No. 3: 09-cv-963 (PCD), 2010 WL 1644572, at *4 (D. Conn. Apr. 20, 2010); Cassidy v. Nicolo, No. 03 Civ. 6603 (CJS), 2005 WL 3334523, at *5 (W.D.N.Y. Dec. 7, 2005) (collecting cases). HIPAA therefore does not afford a colorable basis for this Court to exercise federal question jurisdiction over Hill's suit.

### 3. 42 U.S.C. §§ 1985 and 1986

In his Seventh Claim, Hill alleges that the Post and the News reporters conspired together, and with unnamed BOP employees, to violate his civil rights, in violation of 42 U.S.C. §§ 1985 and 1986. (SAC at 4). Hill further contends that his name and photograph, and details of his life, would not have been published if "his gender had been female, or his race white and he was not incarcerated." (Id.). In support of this claim, Hill notes that when a female MDC officer was arrested for sexually abusing a prisoner, neither the Post nor the News "printed her name, published her picture, or talked . . . about her past sexual relationships." (Id.).

The relevant portion of Section 1985 is subsection (3), which provides that "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," the person injured may recover damages. To state a claim under that statute, a plaintiff must plead "[a] a conspiracy; [b] for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities

under the laws; [and] [c] an act in furtherance of the conspiracy; [d] whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (citing United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). A Section 1985(3) claim "can reach private as well as public conspiracies that seek to deprive a class of equal protection of the laws or equal privileges under the laws." Farber v. City of Patterson, 440 F.3d 131, 134-35 (3d Cir. 2006).

Hill's Section 1985(3) claim fails because he has not plausibly alleged that the purpose of the conspiracy – assuming that one existed – was to deprive him of equal protection on racial or gender grounds, rather than, as appears to be the case, simply to sell newspapers by reporting salacious facts. Indeed, the only facts Hill has alleged to support his claim are that an unnamed "female prisoner" was not named in either the Post or the News when "an MDC lieutenant [was] arrested for sexually abusing" her. (SAC at 4). There are many lawful reasons, however, why a newspaper might choose to print the name of one victim and not the other, not the least of which is the victim's notoriety. In sum, although it is possible that Hill's theory as to the Defendants' motivations may be correct, this is insufficient to make his conspiracy claim plausible. Moreover, his conclusory allegations add nothing to the equation and cannot salvage his Section 1985 claim.

Turning to Section 1986, that statute provides a damages remedy against persons who have knowledge of a proposed conspiracy in violation of Section 1985 and the ability to thwart it, but fail to do so. Mian, 7 F.3d at 1088. Accordingly, "without a violation of Section 1985, there can be no violation of Section 1986." Koch v. Mirza, 869 F. Supp. 1031, 1039 (W.D.N.Y. 1994); accord Baptiste v. N.Y.C. Transit Auth., No. 02 Civ. 6377 (NRB), 2004 WL 626198, at *7 (S.D.N.Y. Mar. 29, 2004). Here, Hill has failed to plead a Section 1985(3) violation. Therefore, as a matter of law, Hill's Section 1986 claim also fails to state a federal claim.

    4.    Bivens Claims

Finally, in his opposition papers, Hill argues that he has stated a colorable Bivens claim. (Pl.'s Response (Docket No. 37) at 5). In Bivens v. Six Unknown Agents, 403 U.S. 388, 397 (1971), a plaintiff was permitted to bring an action against federal employees to recover damages arising out of a Fourth Amendment violation. The Bivens doctrine subsequently has been extended to situations involving other constitutional violations. See, e.g., Carlson v. Green, 446 U.S. 14, 17-19 (1980) (Eighth Amendment deliberate indifference claim); Davis v. Passman, 442 U.S. 228, 230 (1979) (Fifth Amendment due process claim); see also Iqbal v. Ashcroft, 129 S. Ct. 1937, 1948 (2009) (assuming, without deciding, that a First Amendment claim is actionable under Bivens).

In the SAC, Hill alleges that unnamed BOP officials conspired with Post and News reporters to disclose confidential information regarding his suicide watch status

(Claim Three), as well as publish false information about him (Claim Four).  (SAC at 2-3).  Assuming that this conduct gives rise to a valid Bivens claim, Hill nevertheless would have had to initiate his suit against the federal officials responsible within the statute of limitations.[2]  In New York State, federal courts apply the state three-year statute of limitations for unintentional torts to Bivens claims.  See Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998); Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987).  Federal courts apply federal law, however, to determine when a Bivens claim accrues.  Kronisch, 150 F.3d. at 123.

Hill bases his claim that BOP officials leaked information to the Post and News reporters on the contents of the newspaper articles.  By mid-April 2007, those reporters had published articles stating that the inmate whom Sanchez was accused of "having sex with" was Hill, that he was a "violent, abusive, twice convicted felon," and that he was lodged in a "special 'suicide cell.'"  (See Pl.'s Response Attach. (Post article dated April 13, 2007); see also Carroll Aff. Ex. A (News article dated April 14, 2007)).  His Bivens claim therefore clearly accrued by then.  Nevertheless, Hill failed to name or serve any BOP officials with process before the expiration of the three-year limitations period.  Moreover, "'John Doe' pleadings cannot be used to circumvent statutes of limitations because the replacement of a 'John Doe' with a named party in effect

---

[2]     Hill could not bring a Bivens claim against the reporters because they are not government officials.  See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 63-64 (2001) (declining to extend Bivens liability to a private entity contracting with the BOP).

11

constitutes a change in the party sued." Aslandis v. U.S. Lines, Inc., 7 F.3d 1067, 1075 (2d Cir. 1993) (citations omitted); accord Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (affirming dismissal of plaintiff's claims against officers named only as "John Does" before statute of limitations expired); Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995) (amended complaint adding individual police officers does not relate back to complaint naming "John Doe" officers).  Hill's Bivens claims against the unnamed BOP defendants consequently are time barred.[3]

    B.    Diversity Jurisdiction

Hill argues, in the alternative, that this Court can hear his state law claims pursuant to its diversity jurisdiction under 28 U.S.C. § 1332.  (SAC at 1).  He alleges in that regard that complete diversity exists because the Defendants are all New York citizens, while he is "no longer at present a citizen of the state of New York and is a citizen of the United States BOP [] and any state they choose to send [him] to."  (Id.).  As Chief Judge Preska previously advised Hill, the state where he is incarcerated is not necessarily the same as his state of citizenship.  (See Docket No. 3 (Order dated June 26, 2008)).  Rather, the citizenship of an individual for diversity purposes is determined by

---

[3]    Rule 15(c) of the Federal Rules of Civil Procedure permits an amendment to relate back to the date of the original pleading when, among other things, the new party should have known that "but for a mistake concerning the proper party's identity," he would have been named at an earlier time.  Rule 15(c) cannot salvage Hill's time-barred Bivens claims because a lack of knowledge of the defendant officers' identities is not "a mistake" within the meaning of the rule.  See Barrow, 66 F.3d at 470; Daniels v. Loizzo, 174 F.R.D. 295, 300-01 (S.D.N.Y. 1997).

his domicile.  Linardo v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998).  "[A] prisoner is presumed to retain his former domicile," although the presumption is rebuttable and he can "attempt to demonstrate that he has established a new domicile in his state of incarceration."  Fermin v. Moriarty, No. 96 Civ. 3022 (MBM), 2003 WL 21787351, at *2 (S.D.N.Y. Apr. 4, 2003) (citing Housand v. Heiman, 594 F.2d 923, 925 n.5 (2d Cir. 1979)).

It apparently is undisputed that Hill was domiciled in New York prior to his incarceration.  (See, e.g., Docket No. 37 (Aff. of Demetrius Hill, sworn to on Apr. 1, 2010) ¶¶ 3-4).  In an to effort rebut the presumption that he continues to be domiciled there, Hill now states that he will live with his brother in the State of Delaware upon his release and has already taken steps to reflect that change in his domicile.  (Id. ¶¶ 2, 6; see also id. (Aff. of Gerraud Hill, sworn to on Jan. 20, 2010)).  What Hill overlooks is that diversity of citizenship must exist when a lawsuit is filed.  See Freeport-McMoran v. KN Energy, 498 U.S. 426, 428 (1991).  Regardless of where Hill may choose to live upon his release, he simply has not overcome the presumption that New York was his domicile at the time he filed this suit.  See Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243-44 (2d Cir. 1984) (party claiming new domicile must show that he has acquired a residence there).  Accordingly, because both the Post and the News have their principal places of business in New York (see Decl. of Slade R. Metcalf, Esq., dated Jan. 15, 2010, ¶ 2; Carroll Aff. ¶ 8), the Court cannot exercise diversity jurisdiction over any of Hill's

claims.  See 28 U.S.C. § 1332(c)(1) (corporation is generally deemed citizen of any state where it has been incorporated and state where its principal place of business is located).

Moreover, even if this Court were to assume that Hill was a citizen of Delaware when this suit was commenced, the Post is a Delaware corporation.  A corporation is a citizen of its state of incorporation.  Id.  The Post is therefore a non-diverse defendant.  Similarly, the News is a Delaware limited partnership, the general partner of which is a Delaware corporation.  (Carroll Aff. ¶ 8).  Since the Court must look to the citizenship of all of the members of an unincorporated artificial entity such as a partnership, complete diversity would not exist even if the News were the only defendant.

IV.     Conclusion

In the absence of either federal question or diversity jurisdiction, this Court lacks subject matter jurisdiction to hear Hill's claims.  The Defendants' motions to dismiss, (Docket Nos. 25, 30), therefore should be granted, and the complaint should be dismissed.

V.      Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within fourteen days from today, make them in writing, file them with the clerk of the Court, and send copies to the chambers of the Honorable Paul A. Crotty, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York

10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Crotty. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

DATED:   New York, New York
         May 28, 2010

                                            _____
                                            /FRANK MAAS
                                            United States Magistrate Judge

Copies to:

Anne B. Carroll, Esq.
Vice President & Deputy General Counsel
Daily News
Fax: (212) 643-7843

Rachel F. Strom, Esq.
Hogan & Hartson, LLP
Fax: (212) 918-3100

Demetrius Hill [Pro Se]
68133-053
FCI Talladega
PMB1000
Talladega, AL 35160